# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| MARKIE L. FARNHAM | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 1:13-cv-305-JDL |
| WALMART STORES EAST, L.P. | ) |
| | ) |
| Defendant. | ) |

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

This case involves a complaint brought by Markie Farnham against Walmart Stores East, L.P. under the Maine Human Rights Act ("MHRA"), 5 M.R.S. § 4551 et. seq., which Walmart removed to this Court. ECF No. 1; ECF No. 1-1. Farnham's complaint advances two theories of disability discrimination against Walmart: specifically, that after she suffered a workplace injury, Walmart failed to reasonably accommodate her injury and then wrongfully terminated her employment because of the injury. ECF No. 1-1 at 2. Walmart has moved for summary judgment under both theories. ECF No. 42. I deny the motion.

## II. EVIDENTIARY CONSIDERATIONS

Before addressing the disputed and undisputed material facts for the purposes of summary judgment, it is necessary to settle an evidentiary dispute between the parties.[1] The issue concerns a conversation Farnham had with a supervisor, Chad

---

[1] The parties' statements of material fact contain numerous evidentiary objections, not all of which require detailed resolution. To the extent that any of the other facts that I find for the purpose of summary judgment are the subject of an objection, I resolve the objection in favor of admission.

Tozier, about Farnham's use of prescription pain medication. ECF No. 47 at 17; ECF No. 49 at 18. Farnham contends that "Tozier asked [her] whether she had taken the [prescribed] doses too close together, and she told him that it was possible that she could have taken [two] pills too close together, although her doctor had okayed her taking more medication if she needed it during the day." ECF No. 47 at 17. Walmart seeks to exclude this statement from the summary judgment record, arguing that Farnham's report to Tozier about what her doctor told her is inadmissible hearsay. ECF No. 49 at 18.

Hearsay is an out of court statement offered to prove the truth of the matter asserted. Fed. R. Evid. 801(c). Here, Farnham's statement is not offered for the truth of whether Farnham's doctor in fact indicated that it was acceptable for her to closely dose her pain medication. Rather, the statement is offered to prove that Walmart was aware that Farnham claimed she was taking her medication in accordance with her doctor's orders when it terminated her under its Alcohol and Drug Free Workplace Policy. Because Walmart's policy requires the termination of any employee who fails to follow the prescribed instructions for using a drug, *see* ECF No. 43 at 14; ECF No. 47 at 9, Tozier's knowledge that Farnham claimed that she was instructed by her doctor to take more medication if she needed it during the day, even if that awareness was based on an incorrect statement by Farnham, is relevant to the circumstances of Farnham's termination. Accordingly, I admit Farnham's statement into the summary judgment facts for that specific purpose.

## III. FACTUAL BACKGROUND

The summary judgment record, viewed in the light most favorable to Farnham as the non-moving party, reveals the following facts.

### A. Farnham's Employment at Walmart

Farnham was employed as a pharmacy technician at Walmart's store in Calais from December 2003 until January 19, 2012. ECF No. 43 at 1; ECF No. 47 at 1. As a pharmacy technician, Farnham was licensed by the Maine Board of Pharmacy and required to adhere to the Board's rules of professional conduct. ECF No. 43 at 2; ECF No. 47 at 1.

### B. Farnham's Injury and Subsequent Treatment

On January 14, 2011, Farnham suffered a slip and fall while on duty at Walmart, injuring her hip. ECF No. 43 at 3; ECF No. 47 at 2. The injury led to Farnham filing a successful workers' compensation claim. *Id.* During this period, Farnham sought treatment from various doctors, including family practitioner Dr. Larry Newman and orthopedic specialist Dr. Stephen Kelly. ECF No. 43 at 3; ECF No. 47 at 2.

After her injury, Farnham made a written request for a workplace accommodation to personnel manager Tracy Gardner, asking to be given longer and more frequent breaks to accommodate her discomfort. ECF No. 43 at 3; ECF No. 47 at 2. Farnham also made a second written request to Gardner, asking that she be permitted to sit down during certain periods at work. ECF No. 43 at 4; ECF No. 47 at 2. Both requests were granted. *Id.*

In May 2011, Dr. Newman completed a Maine Workers' Compensation Board practitioner's report ("M1 Form") in which he noted that Farnham could return to her full work capacity with no restrictions. ECF No. 43 at 4; ECF No. 47 at 2. However, Farnham continued to take prescription pain medications. ECF No. 47 at 16-17; ECF No. 49 at 17-18.

**C.     Farnham's Request for a Workplace Evaluation**

In November 2011, Farnham had Drs. Kelly and Newman complete two additional M1 Forms. ECF No. 43 at 4-5; ECF No. 47 at 3. In his M1 Form, from a November 7 visit, Dr. Kelly recommended that Farnham have a workplace ergonomic evaluation, make frequent position changes to manage her pain, and conduct activity as her pain would tolerate. *Id.* In his M1 Form, from a November 9 visit, Dr. Newman stated: "Per recommendation of Orthopedics, Portland: Get worksite evaluation, frequent position changes to prevent stiffness, activity as tolerated [with] pain." *Id.* The purpose of the proposed workplace evaluations was to explore ways in which Farnham's work station could be arranged in order to reduce the hip pain she experienced on the job. ECF No. 47 at 12; ECF No. 49 at 8-9.

Walmart has an "Accommodation in Employment" policy which requires employees requesting disability accommodations to submit "Request for Accommodation" forms before accommodations are granted. ECF No. 43 at 2, ECF No. 47 at 7. Farnham did not complete such a formal written request. ECF No. 43 at 12; ECF No. 47 at 7-8. However, in November, Farnham gave the M1 Forms from Drs. Newman and Kelly to Tracy Gardner, her personnel manager. ECF No. 47 at

4

11; ECF No. 49 at 4-5. Farnham also spoke multiple times to her direct supervisor, Amanda Craig, informing Craig that her doctors had recommended workplace evaluations. *Id.*

During this time, Farnham spoke with the staff at the Calais Regional Hospital Rehabilitation Department about scheduling a potential worksite evaluation, who recommended that the workplace evaluation take place inside the pharmacy at the Calais Walmart. ECF No. 43 at 6; ECF No. 47 at 4. Farnham relayed this information to Craig. *Id.* Craig spoke with District Manager Chad Tozier, who told Craig that the evaluation would have to take place with the evaluator positioned outside the pharmacy window while observing Farnham working inside the pharmacy. ECF No. 43 at 7; ECF No. 47 at 4. Accordingly, Craig told Farnham that Walmart would permit the evaluation only if the evaluator was positioned outside the pharmacy window while observing Farnham working. *Id.* Walmart's refusal to allow the evaluator to come behind the pharmacy counter arose out of concerns about potential violations of HIPAA requirements and Walmart's Pharmacy Security Policy that could result from having a third-party in an area with private patient information. *Id.*

After hearing from Craig, Farnham informed staff at the Calais Regional Hospital about the proposed restriction and was told that the evaluation had to be conducted from behind the pharmacy counter in order for the evaluator to watch Farnham perform her job duties closely. ECF No. 47 at 11; ECF No. 49 at 5-6. Farnham reported this information to Craig and also told Craig that anyone who

conducted the evaluation would be HIPAA trained. ECF No. 47 at 11; ECF No. 49 at 6-7. Craig told Farnham that she would discuss the request further with higher-level management. *Id.* Farnham did not hear back from Craig or anyone else at Walmart about scheduling the evaluation. *Id.*

**D.     Farnham's Termination**

On December 30, 2011, Farnham worked in the pharmacy with a visiting pharmacist, Ryan Frost. ECF No. 43 at 13; ECF No. 47 at 8. Frost reported to Tozier and Craig that Farnham had asked him to refill her pain medication prescription before it was due to be refilled, which he declined to do. *Id.* Farnham claims that Frost refused her request to speak with Dr. Newman about the prescription refill, and that she did not witness Frost speak with Dr. Newman that day. ECF No. 47 at 14; ECF No. 49 at 11-12. Frost, however, reported to Walmart that he did, in fact, speak with Dr. Newman and was told not to refill the prescription early. ECF No. 43 at 13; ECF No. 47 at 8-9. Frost characterized the incident to Tozier as Farnham exhibiting drug-seeking behavior. ECF No. 43 at 13; ECF No. 47 at 8.

On January 5, 2012, Farnham worked a shift with Amanda Craig. ECF No. 43 at 13-14; ECF No. 47 at 9. At the end of her shift, Craig sent an e-mail to Tozier in which she reported that Farnham had appeared to be moving slowly and slurring her speech at work. *Id.* Following this e-mail, on January 6, Farnham was asked to participate in a meeting with Walmart managers, which Tozier joined by phone, to discuss her prescription medication usage. ECF No. 43 at 14; ECF No. 47 at 9. Farnham told Tozier that she did not take more than the amount of medication she

6

was prescribed and that she did not feel impaired at work. ECF No. 47 at 17; ECF No. 49 at 18. She did admit that it was possible that she could have taken two pills too closely together, although she noted that her doctor had told her it was alright to do so. *Id.* However, regardless of what Farnham told Tozier during the January 6 meeting, Tozier documented that Farnham had admitted to feeling slightly impaired and taking more medication than she was prescribed. ECF No. 43 at 14; ECF No. 47 at 9.

Following Farnham's conversation with Tozier, Farnham was suspended without pay on January 6. ECF No. 43 at 14; ECF No. 47 at 9. Walmart has an Alcohol and Drug Free Workplace Policy that requires the termination of any employee who exceeds a prescribed dose or fails to follow the prescribed instructions for using a prescription medication. *Id.* On January 19, 2012, Farnham's employment was terminated based on this policy. ECF No. 43 at 15; ECF No. 47 at 9.

## IV. SUMMARY JUDGMENT STANDARD

### A. Federal Rule of Civil Procedure 56

Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Ahmed v. Johnson*, 752 F.3d 490, 495 (1st Cir. 2014). In making that determination, a court must view the evidence in the light most favorable to the non-moving party. *Johnson v. University of Puerto Rico*, 714 F.3d 48, 52 (1st Cir. 2013). "[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there

7

is a genuine issue for trial." *Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014) (citations and quotations omitted).

**B.     Local Rule 56**

Local Rule 56 defines the evidence that this court may consider in deciding whether genuine issues of material fact exist for purposes of summary judgment. First, the moving party must file a statement of material facts that it claims are not in dispute, with each fact presented in a numbered paragraph and supported by a specific citation to the record. *See* Loc. R. 56(b).

Second, the non-moving party must submit its own short and concise statement of material facts in which it admits, denies, or qualifies the facts alleged by the moving party, making sure to reference each numbered paragraph of the moving party's statement and to support each denial or qualification with a specific citation to the record. Loc. R. 56(c). The non-moving party may also include its own additional statement of facts that it contends are not in dispute. *Id.* These additional facts must also be presented in a numbered paragraph and be supported by a specific citation to the record. *Id.*

Third, the moving party must then submit a reply statement of material facts in which it admits, denies, or qualifies the non-moving party's additional facts, if any. Loc. R. 56(d). The reply statement must reference each numbered paragraph of the non-moving party's statement of additional facts and each denial or qualification must be supported by a specific citation to the record. *Id.*

8

The court may disregard any statement of fact that is not supported by a specific citation to the record, Loc. R. 56(f), and the court has "no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of fact." *Id.*; *see also, e.g., Borges ex rel. S.M.B.W. v. Serrano-Isern*, 605 F.3d 1, 5 (1st Cir. 2010); Fed. R. Civ. P. 56(e)(2). Properly supported facts that are contained in a statement of material or additional facts are deemed admitted unless properly controverted. Loc. R. 56(f).

## V. LEGAL ANALYSIS

The Maine Human Rights Act makes it unlawful for an employer to discriminate against a qualified individual on the basis of physical disability. *See* 5 M.R.S. § 4572. Farnham is proceeding under two separate theories of unlawful discrimination: First, that Walmart discriminated against her by failing to reasonably accommodate her disability. Second, that Walmart discriminated against her by terminating her employment because of her disability. ECF No. 1-1 at 2. Walmart seeks summary judgment on each claim. ECF No. 42 at 1.

**A.** **Disability Discrimination Based on a Failure to Accommodate**

In order to make a claim for failure to accommodate, Farnham must demonstrate that: (1) she is a qualified individual with a disability within the meaning of the MHRA; (2) she works (or worked) for an employer covered by the statute; (3) the employer, despite knowledge of her limitations, failed to reasonably accommodate those limitations; and (4) the employer's failure to do so affected the terms, conditions, or privileges of her employment. *See Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252, 264 (1st Cir. 1999). Walmart does not suggest an

9

absence of evidence as to the first, second, and fourth elements of Farnham's case. *See* ECF No. 42 at 7-15. Accordingly, my analysis centers on the third factor identified in *Higgins*: whether Walmart knowingly failed to provide Farnham with a reasonable accommodation.

In order to establish that her employer had knowledge of her limitations, Farnham must show that she made a "sufficiently direct and specific" request for accommodation that "explain[ed] how the accommodation requested [was] linked to some disability." *Freadman v. Metropolitan Prop. and Cas. Ins. Co.,* 484 F.3d 91, 102 (1st Cir. 2007) (quoting *Reed v. LePage Bakeries, Inc.*, 244 F.3d 254, 261 (1st Cir. 2001)). The law "does not provide that a request cannot be conveyed verbally or that an employer cannot be found to have denied a request that is never formally submitted in writing." *See Venable v. T-Mobile USA, Inc.*, 2008 WL 4937810, *10 (D. Me. Nov. 14, 2008). Whether or not an employee's action constitutes a sufficiently direct and specific request for accommodation that is linked to some disability is a question of fact. *See Freadman*, 484 F.3d at 103-104.

Turning to reasonability, the plaintiff carries the burden of proposing an accommodation that is "at least on the face of things, reasonable." *Kvorjak v. Maine*, 259 F.3d 48, 55 (1st Cir. 2001). Once a plaintiff has done so, an employer has the opportunity to defeat liability by showing that an accommodation would impose an undue hardship. *See Carmichael v. Verso Paper, LLC*, 679 F.Supp.2d 109, 129 (D. Me. 2010).

Here, Farnham did not complete Walmart's designated "Request for Accommodation" form. ECF No. 43 at 12; ECF No. 47 at 7-8. However, Farnham submitted copies of the M1 Forms from Drs. Kelly and Newman to Tracy Gardner, Walmart's personnel manager, ECF No. 47 at 11; ECF No. 49 at 4-5, in which both doctors indicated the need for a worksite evaluation to prevent or reduce the stiffness and pain Farnham experienced as a result of her hip injury, ECF No. 43 at 4-5; ECF No. 47 at 3. In addition to giving these forms to Tracy Gardner, Farnham spoke several times with her direct supervisor, Amanda Craig, about her need for a worksite evaluation. ECF No. 47 at 11; ECF No. 49 at 4-5. I conclude that this evidentiary foundation would permit a reasonable jury to find that Farnham made a sufficiently direct and specific request for accommodation that was linked to her disability. *See Carmichael*, 679 F.Supp. at 133 (D. Me. 2010) (finding that request for accommodation was sufficiently direct and specific when plaintiff produced two M1 Forms listing his work restrictions and "specifically complained" to management.).

Walmart contends, however, that even if Farnham made a legally sufficient request for accommodation, summary judgment is warranted on the question of whether Farnham's request for accommodation was reasonable. ECF No. 48 at 2-3. I conclude that summary judgment is inappropriate on this basis for several reasons.

First, Farnham's request for accommodation was not unreasonable as a matter of law. Walmart argues that the request was *per se* unreasonable because it would have violated Federal law. ECF No. 42 at 13. However, the summary judgment record does not establish that the request to have an employee from Calais Regional

Hospital conduct an in-person workplace evaluation of Farnham at the pharmacy would have led to a HIPAA violation. *See* ECF No. 43 at 7 ("[h]aving third parties inside the pharmacy . . . *raises concerns* about . . . *potential* HIPAA violations.") (emphasis added).

Second, whether Farnham's request for accommodation was reasonable is a question of disputed fact for a jury to resolve. Walmart suggests that, on the basis of the summary judgment record, no reasonable jury could conclude that it was reasonable for Farnham to ask that a Calais Regional Hospital employee conduct an in-person workplace evaluation from behind the pharmacy counter. *See* ECF No. 42 at 10. However, viewing the facts in the light most favorable to Farnham, the summary judgment record reveals that under some circumstances, Walmart allowed third parties behind the pharmacy counter, ECF No. 47 at 12-3; ECF No. 49 at 9; any employee of Calais Regional Hospital who would have conducted Farnham's evaluation would have been HIPAA-trained, ECF No. 47 at 13; ECF No. 49 at 9; there are ways to protect the privacy of patient data, ECF No. 47 at 11-12; ECF No. 49 at 7; and this type of evaluation may have been permitted by the Maine Board of Pharmacy Rules, ECF No. 43 at 8; ECF No. 47 at 4.

Walmart does have a policy that places restrictions on who may enter a Walmart pharmacy. ECF No. 43 at 7; ECF No. 47 at 4. However, there appears to be a genuine dispute as to whether the policy gives management discretion as to who to allow into the pharmacy. ECF No. 43 at 8; ECF No. 47 at 4. Even if there were no genuine disputes of fact on this point, whether or not it was reasonable for Farnham

12

to ask that a workplace evaluator be allowed in the pharmacy, in light of Walmart's policy, is a question for a jury to determine.

Lastly, Walmart's insistence that it offered Farnham a reasonable alternative accommodation does not dispose of this matter on summary judgment. Walmart relies on 5 M.R.S. § 4613(2)(B)(8)(b), which precludes an award of damages against a defendant to a reasonable accommodation claim who "demonstrates good faith efforts, in consultation with the person with the disability who has informed the covered entity that accommodation is needed, to identify and make a reasonable accommodation[.]" This provision "provides an employer with an affirmative defense to a disability discrimination claim regarding a failure to accommodate pursuant to the MHRA." *Kezer v. Central Maine Med. Ctr.*, 2012 ME 54, ¶ 27, 40 A.3d 955.

Just as a jury must determine the reasonableness of Farnham's request, *see supra*, a jury must also determine the reasonableness of Walmart's alternate proposal to conduct the evaluation from outside of the pharmacy area. On this issue, the summary judgment record indicates that Kris Mesman, the Director of Rehabilitation at Calais Regional Hospital, wrote a letter indicating to Walmart that it would be impossible to complete a full workplace evaluation without an evaluator having access to the pharmacy area. ECF No. 47 at 12; ECF No. 49 at 7-8. The record as a whole is uncertain as to whether such an evaluation would be possible. *See* ECF No. 43-5 at 7; ECF No. 43-14 at 5 (Kris Mesman: "I can't say one way or the other whether they could have."); ECF No. 43-10 at 4 (Dr. Kelly: "[I]t's asking me to speculate"). Moreover, there is a genuine dispute of fact as to whether a person standing outside

the pharmacy is able to see a person working in the pharmacy from the waist down. ECF No. 43 at 9; ECF No. 47 at 5. This evidence would permit a jury to find that Walmart's preferred alternative was an unreasonable one.

I conclude that the summary judgment record would allow a reasonable jury to determine that Farnham's request to have a workplace evaluation conducted behind the pharmacy counter was reasonable and that Walmart's alternate proposal was unreasonable. Accordingly, Farnham's claim for failure to accommodate should proceed to trial.

**B.     Disability Discrimination Based on Adverse Action**

In order to prove disability discrimination under the MHRA, Farnham must demonstrate the following: (1) that she suffers from a disability within the meaning of the statute; (2) that she is qualified to perform the essential functions of her job with or without reasonable accommodation; and (3) that Walmart treated her adversely in whole or in part because of her disability. *See Doyle v. Dep't of Human Servs.*, 2003 ME 61, ¶ 14, 824 A.2d 48. After the plaintiff establishes a presumption of discrimination by satisfying these elements, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* at ¶ 15. The burden then shifts back to the plaintiff to demonstrate that this nondiscriminatory reason is pretextual and that unlawful discrimination brought about the adverse employment action. *Id.*

Walmart does not suggest an absence of evidence as to the first or second prongs of this analysis. ECF No. 42 at 15-17. As such, I focus on the causation prong and the subsequent burden-shifting framework.

1. **Causation**

Walmart argues that Farnham has not introduced evidence sufficient for a reasonable jury to conclude that her disability was the but-for cause of her termination. ECF No. 42 at 16. However, but-for causation is not the correct standard in this context. The proper causation standard in an employment discrimination action under Maine law is whether the claimed discrimination "was a substantial, even though perhaps not the only, factor motivating the employee's dismissal." *See Walsh v. Millinocket*, 2011 ME 99, ¶ 25, 28 A.3d 610; *Caruso v. Jackson Laboratory*, 2014 ME 101, ¶ 13, 98 A.3d 221.[2]

There is sufficient evidence for a reasonable jury to conclude that Farnham's disability was a substantial factor motivating her dismissal. Walmart employed Farnham for more than eight years, apparently without incident. ECF No. 43 at 1; ECF No. 47 at 1. Farnham's termination came after she suffered a workplace injury that required multiple accommodations. ECF No. 43 at 3-4; ECF No. 47 at 2. Her termination came shortly after she made repeated requests for a workplace evaluation that could help her adjust to working with a hip injury. ECF No. 47 at 11;

---

[2] In *Caruso*, the Law Court observed that the substantial factor test could be seen as "[a]nother way of restating" the but-for causation test. *Caruso*, 2014 ME 101, ¶ 17, 98 A.3d 221. However, the opinion reiterates that "[t]o demonstrate a causal link [in a WPA claim], the plaintiff must show that the protected activity . . . was a substantial . . . factor motivating the employee's dismissal." *Id.* ¶ 13 (quotations and citations omitted). Moreover, there is no indication in *Caruso* that the Law Court intended to overrule *Walsh*, in which the Law Court reiterated that "the proper inquiry on an employment discrimination claim is whether the discrimination itself—in this case retaliation against an employee who engaged in protected conduct pursuant to the WPA—was a substantial, even though perhaps not the only, factor motivating the employee's dismissal." *Walsh*, 2011 ME 99, ¶ 25, 28 A.3d 610 (internal quotations and citations omitted). Accordingly, the protected activity need not be the sole or primary factor motivating an adverse employment action. Even if more than one factor affects the decision to dismiss an employee, the employee may prevail if one factor is unlawful and, in fact, it made a difference in determining whether the employee was to be retained or discharged, such that a jury could conclude that protected activity was a substantial factor motivating the dismissal.

ECF No. 49 at 4-5. Her termination also followed a report from her supervisor, Amanda Craig, that although Farnham "hasn't thus far seemed to be drug impaired . . . [it] appears that in order to be able to work physically she does need to be medicated." ECF No. 47 at 14; ECF No. 49 at 13. The timing of Farnham's dismissal, coupled with Craig's acknowledgment, would allow a reasonable jury to conclude that Farnham's disability and corresponding need for prescription medication were a substantial factor in her termination. Accordingly, summary judgment as to the causation factor is inappropriate.

### 2. Pretext

Even if Farnham can satisfy the *prima facie* case of disability discrimination, Walmart argues that Farnham has not introduced sufficient evidence for a reasonable jury to conclude that Walmart's non-discriminatory rationale for Farnham's termination (that she violated company drug policy) was pretextual and that the real reason was disability discrimination. ECF No. 42 at 17.

"One way a plaintiff can establish pretext is by showing weaknesses, inconsistencies and contradictions in the employer's proffered legitimate reasons for termination." *Trafton v. Sunbury Primary Care, P.A.*, 689 F.Supp.2d 180, 197 (D. Me. 2010). Viewed in the light most favorable to Farnham, the facts demonstrate several weaknesses and inconsistencies in Walmart's claim that Farnham was fired for violation of the company's prescription medication policy.

First, it is uncertain whether Farnham actually violated Walmart's prescription medication policy. Walmart's policy requires the termination of any

16

employee who exceeds a prescribed dose of prescription medication or who fails to follow the prescribed instructions for using a drug. ECF No. 43 at 14; ECF No. 47 at 9. However, there is a genuine dispute as to whether Farnham ever admitted to exceeding her prescribed amount of medication or admitted to feeling impaired at work. *See id.* While Walmart claims that Farnham made these admissions in a January 6, 2012 meeting with District Manager Chad Tozier, Farnham denies making the admissions. *Id.* This dispute presents a credibility determination that is properly left to a jury. Moreover, while Farnham admitted that it was possible she could have taken her pills too closely together, she also claims she told Tozier that her doctor had instructed her that this was approved. ECF No. 47 at 17; ECF No. 49 at 18. In addition, at least three other employees, namely Amanda Craig, Kara Preston, and Tracy Gardner, worked with Farnham on January 5 without expressing any concerns to Farnham about her alleged impairment on that day. ECF No. 47 at 15-16; ECF No. 49 at 15-16.

Finally, there is evidence that Walmart's investigation into Farnham's behavior may have been less than thorough. In particular, Tozier and store manager Laura Donovan failed to view a video of Farnham at work on January 5, despite Farnham's insistence that the video would show her to be functioning normally. ECF No. 47 at 17; ECF No. 49 at 19.

Walmart may persuade a jury that Farnham violated the company's prescription medication policy and was let go for doing so. However, the potential weaknesses that Farnham has identified in Walmart's non-discriminatory rationale

17

for her termination could also lead a jury to conclude that Farnham's termination for violating Walmart's prescription medication policy was pretextual. Accordingly, summary judgment on this issue is inappropriate.

## VI. CONCLUSION

For the foregoing reasons, defendant's Motion for Summary Judgment is **DENIED**.

**SO ORDERED.**

Dated: December 8, 2014  /s/ Jon D. Levy
U.S. District Judge